IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICK SMITH, as next friend of HUNTER DARYL SMITH, an incapacitated person,[1] | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:24-cv-361-BL-JTA (WO) |
| BILL FRANKLIN, et al., | ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the motion to dismiss filed by Defendants Elmore County Sheriff Bill Franklin, Elmore County Jail Warden Tracy Jackson, and Elmore County Corrections Officers Josh Tidwell, G.L. Young, S. Svencer,[2] and A. Rines. (Doc. No. 85.)

For the reasons stated below, the undersigned recommends[3] the motion to dismiss be granted and this action be dismissed with prejudice.

---

[1] The third amended complaint named as Plaintiff "Patrick Smith, as next friend of Hunter Daryl Smith, an incapacitated person." (Doc. No. 83 at 1.) Originally, this action was brought solely in the name of Hunter Daryl Smith.

[2] Svencer's name has been spelled "Spencer" and "Svencer" throughout the record. At oral argument, Smith's counsel clarified that "Svencer" was the correct spelling. (Doc. No. 73 at 28.)

[3] Pursuant to 28 U.S.C. § 636, this action was referred to the undersigned United States Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate." (Doc. No. 54.)

## I.  JURISDICTION

The court exercises jurisdiction over this action based on federal question jurisdiction because the claims alleged arise under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. 28 U.S.C. § 1331.

## II.  PROCEDURAL HISTORY

Smith[4] filed this action on June 14, 2024, naming as Defendants Franklin, Jackson, Tidwell, Young, Svencer, and Rines.[5] (Doc. No. 1.) Smith brings this action against Defendants in their individual capacities. (*Id*.) Since that time, Smith has amended his complaint three times.[6] The operative pleading, the third amended complaint, was filed on May 1, 2025.[7] (Doc. No. 83.)

---

[4] To avoid unnecessary confusion, the undersigned uses "Smith" to refer to Hunter Daryl Smith.

[5] Smith also named Nurse Pamela Oliver as a defendant in his original, amended, and second amended complaints. (Docs. No. 1, 20, 41.) On April 9, 2025, the undersigned entered a Report and Recommendation that the claims against Oliver be dismissed without prejudice and that Oliver be dismissed from this action. (Doc. No. 72.) On April 30, 2025, the United States District Judge adopted the Recommendation. (Doc. No. 77.)

[6] On August 5, 2024, rather than respond to the pending motions to dismiss, Smith filed an amended complaint with leave of court. (Docs. No. 19, 20.) Again, on September 30, 2024, rather than file a response to the pending motion to dismiss the amended complaint, Plaintiff filed a second amended complaint. (Doc. No. 41.) On October 28, 2024, Franklin, Jackson, Tidwell, Young, Svencer, and Rines timely filed a motion to dismiss the second amended complaint. (Doc. No. 58.)

[7] At oral argument on the motion to dismiss the second amended complaint, the undersigned noted allegations in the second amended complaint indicate Smith is incapacitated. (Doc. No. 73 at 4–5; *see also* Doc. No. 41 at 13 ("Since sustaining the injuries during his detention at the Elmore County Correctional Facility, Plaintiff has the reduced mental capacity of a fourteen year old and will never be able to live independently.").) The undersigned inquired whether, in accordance with Rule 17(c) of the Federal Rules of Civil Procedure, the action should have been brought by a representative of Smith as guardian or next friend. (Doc. No. 73 at 4–5.) Smith's counsel was

On May 15, 2025, Franklin, Jackson, Tidwell, Young, Svencer, and Rines filed a motion to dismiss the third amended complaint. (Doc. No. 85.) Smith filed a response in opposition. (Doc. No. 87.) Though Franklin, Jackson, Tidwell, Young, Svencer, and Rines were ordered to file a reply brief, they did not do so. The motion is ripe for review.

### III.   FACTUAL ALLEGATIONS[8]

In the third amended complaint, Smith alleges in July 2022, while he was a pretrial detainee at Elmore County Jail, he was assaulted by other inmates or corrections officers or sheriff deputies. (Doc. No. 83 at 2.)

At 8:13 a.m. on July 8, 2022, a Wetumpka, Alabama police officer arrested Smith at 231 Motel on a charge of public intoxication.[9] (*Id*. at 8.) Smith cooperated with the arresting officers and answered all questions. (*Id*.) Smith stated he had consumed a pint of

---

unprepared to respond and requested ten days to file "something" to address the issue. (*Id*. at 4–6.) With no objection from the other parties, the undersigned granted Smith's counsel ten days to address Smith's competency in a court filing. (*Id*. at 5–6.) Oral argument proceeded on the then-pending motion to dismiss. (*Id.* at 6.)

On April 21, 2025, Smith filed a motion for leave to amend the complaint "so as to name [Smith's] father, Patrick Smith, as Plaintiff, who brings the action as next friend of Hunter Daryl Smith." (Doc. No. 75 at 1.) Smith's counsel obtained permission from defense counsel to file an amended pleading for that limited purpose. (*Id.* at 2.) The court granted Smith's motion for leave to amend the complaint and Smith filed the third amended complaint. (Docs. No. 81, 83.)

[8] The facts here are drawn from the third amended complaint and are construed in the light most favorable to Smith. (Doc. No. 83.) These facts may well differ from those that ultimately can be proved.

[9] Prior to the date of Smith's arrest, the hotel manager had called police to request Smith be removed from the property. (Doc. No. 83 at 8.) Smith was living at the property. (*Id*.)

vodka since 3:00 a.m. that morning but denied ingesting anything else. (*Id*.) Video of the arrest shows Smith shirtless with no visible bruises.[10] (*Id*.)

Wetumpka police officers transported Smith to the Elmore County Jail, arriving at approximately 8:36 a.m. (*Id*. at 8–9.) Smith was booked on the public intoxication charge and "detained on a [twelve]-hour hold to allow him to become sober."[11] (*Id*. at 8.) Officer Kyle Foster, who filled out a jail booking checklist, noted Smith was intoxicated, but did not check a box on the form labeled "injured." (*Id*. at 9.) At 8:55 a.m., Officer Watson completed a medical observation form on which he indicated no visible signs of injury or illness requiring immediate medical care. (*Id.*) However, Officer Watson noted Smith "understood questions, had self-inflicted injuries or scars, walked with a stagger, had a blank stare, and was timid." (*Id*.) At the time of his booking, Smith "was in good physical health," other than intoxication, "and was not suffering from any injuries other than scratches to both knees," which he stated were caused by a fall in the motel parking lot. (*Id.* at 13.) During the booking, Smith was unsteady on his feet and could not walk without assistance.[12] (*Id*. at 9.)

---

[10] At oral argument, defense counsel stated he had provided Smith pre-suit discovery consisting of all relevant jail video footage, all relevant jail logs, and the investigative report from Alabama Law Enforcement Agency's State Bureau of Investigation. (Doc. No. 73 at 7–9.) Smith's counsel did not disagree.

[11] Smith alleges he was "wrongfully detained beyond the [twelve]-hour hold imposed on him following his arrest for public intoxication" because he was "detained for two and a half days in the Elmore County Jail instead of being released . . . on July 8, 2022." (Doc. No. 83 at 14.)

[12] Smith also was placed in a wheelchair when moved between cells. (*Id.*)

Tidwell "was not on duty on the morning of July 8, 2022, when [Smith] arrived at the Elmore County Jail." (*Id.*) Tidwell first encountered Smith when he came on duty at 6:00 p.m. on July 9, 2022 for a twelve-hour shift. (*Id.*) At approximately 11:22 p.m. on July 9, Tidwell moved Smith to a padded cell after deeming him a fall risk.[13] (*Id.*) At some point[14] thereafter, Smith was taken to a shower to clean up. (*Id.* at 10.) Tidwell instructed Svencer and Rines to assist Smith with the shower. (*Id.*)

Smith alleges that at some point during his detention, he was severely beaten and suffered serious physical injury. (*Id.* at 10.) At approximately 8:38 p.m. on July 10, 2022, approximately twenty-one hours after Smith was first moved to the padded cell, Tidwell and Young took Smith to the nurse's station to be evaluated because he was lethargic and would not eat. (*Id.*) The correctional nurse determined Smith should be transported to a hospital for treatment. (*Id.*)

In response to a call Tidwell placed, Wetumpka police arrived within forty-five minutes,[15] and an ambulance arrived shortly thereafter. (*Id.*) Tidwell assisted the EMTs in

---

[13] No jail records or video are available between the time Smith was booked at the jail on the morning of July 8 and when Tidwell moved him to the padded cell at 11:22 p.m. on July 9. (Doc. No. 83 at 9–10.)

[14] The third amended complaint does not indicate the time or date Smith was taken to shower.

[15] Smith does not allege any Defendant is responsible for the 45-minute delay between the time the ambulance was requested and its arrival. (*See* Doc. No. 73 at 33–34.)

placing Smith in the ambulance.[16] (*Id.*) Due to the seriousness of Smith's injuries,[17] the EMT transported him to Baptist South Hospital in Montgomery. (*Id.* at 10-11.) Upon arrival at the hospital, the EMTs notified emergency room personnel they were transporting a trauma patient "who had possibly been assaulted at the jail." (*Id.* at 11.) Emergency room personnel observed bruises all over Smith's body and contusions on his head, neck, maxillofacial area, chest, both arms, and both legs, as well as bruises to his chest and torso. (*Id.* at 12.) Smith also suffered from a collapsed lung, torn trachea and traumatic brain injury. (*Id.*)

Smith does not recall what happened to him at the jail because he suffers from a form of dementia caused by the head injury. (*Id.* at 12.)

As relief in this lawsuit, Smith seeks monetary damages. (*Id.* at 28-29.)

## IV.    STANDARD OF REVIEW

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Sanders*

---

[16] Surveillance video of the event shows bruising on both Smith's knees. (*Id.*)

[17] One of the EMTs suspected Smith had a head injury, noted a hematoma over one of Smith's eyes, and believed Smith needed to undergo scans at a hospital to check for internal bleeding. (*Id.* at 11.) When the EMT asked Smith questions about his identity and location, Smith gave one-word or non-responsive answers. (*Id.*) Smith could not respond when asked what had happened to him. (*Id.*) The EMTs reported Smith was skittish, slow to respond to questions, confused, disoriented, and unable to walk. (*Id.* at 11.) They observed he was pale, cold to the touch, and exhibited an altered mental state. (*Id.*) During the ambulance transport, EMTs also observed Smith had difficulty breathing. (*Id.*)

*v. Zalesky,* No. 1:25-CV-71-WKW, 2026 WL 579503, at *1 (M.D. Ala. Mar. 2, 2026) (internal quotations and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed*, *Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation modified).

The allegations in the complaint should present a "plain statement possessing enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (cleaned up). "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply

"are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. A plaintiff must "allege enough facts to nudge his claim . . . across the line from conceivable to plausible." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 570).

## V.    DISCUSSION

Smith alleges five counts in the third amended complaint. In Count I, Smith alleges a § 1983 claim against all Defendants for deliberate indifference to a serious risk of harm. In Count II, Smith alleges a § 1983 claim against Defendants Franklin and Jackson for failure to implement appropriate policies, customs and practices to ensure the physical safety of pretrial detainees. In Count III, Smith alleges a § 1983 claim against Defendants Franklin and Jackson for failure to implement appropriate policies, customs and practices to ensure timely, necessary, and efficacious medical care for pretrial detainees. In Count IV, Smith alleges a § 1983 claim against Defendants Franklin and Jackson for failure to implement appropriate policies, customs and practices to ensure he was not unconstitutionally deprived of liberty by being detained in jail more than twelve hours. In Count V, Smith alleges a § 1983 claim against Defendants Tidwell, Young, Svencer, and Rines, for deliberate indifference to his serious medical needs.

The undersigned addresses each count in turn.

A.    Count I – Deliberate Indifference to a Risk of Serious Harm

Count I is a § 1983 claim against all Defendants for "deliberate indifference to the substantial risk of serious harm" to Smith. (Doc. No. 83 at 18-20.) Specifically, Smith alleges Defendants "knew of [his] intoxicated condition when he arrived at the Elmore

County Jail on July 8, 2022, because [he] was unsteady on his feet and unable to walk without assistance." (*Id.* at 18 (emphasis added).) Smith alleges his "intoxicated condition placed him at substantial risk of serious harm from other inmates in the Elmore County Jail." (*Id.*) Smith alleges Defendants recklessly failed to monitor him during "a period of approximately 37 hours and 45 minutes," which was the time between his booking and the moment Tidwell took him to the padded cell on July 9, 2022. (*Id.* at 19.) He alleges the failure to monitor during that time placed him at serious risk of harm "from other inmates arising from his intoxicated condition[ ]" and the injuries he suffered while detained "were a known or obvious consequence of Defendants' failure to monitor him in light of his intoxicated condition." (*Id.* at 18–19.)

The United States Constitution[18] prohibits "a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" because "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 828, 833 (1994) (citations omitted).[19] "Courts refer to lawsuits alleging a breach of this duty as 'failure-to-protect' claims." *Cain v. Calloway*, No. 2:22-

---

[18] "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards" for a deliberate indifference claim "under the Fourteenth Amendment are identical to those under the Eighth." *Id.*

[19] The undersigned does not address Smith's random allegations that he was assaulted by correctional officers or sheriff deputies as such a claim would be an excessive use of force claim and Smith has not alleged a count for excessive use of force in the third amended complaint. (*See* Doc. No. 83.)

9

cv-596-ECM, 2025 WL 913453, at *6 (M.D. Ala. Mar. 25, 2025). Nonetheless, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To avoid dismissal of his deliberate indifference claim under Count I, Smith must allege facts that plausibly show (1) he "suffered a deprivation that was objectively[,] 'sufficiently serious,' and (2) [D]efendant[s] acted with 'subjective recklessness as used in the criminal law.'" *Wingo v. WellStar Health Sys., Inc*., 160 F.4th 1184, 1190 (11th Cir. 2025) (quoting *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)). To establish the second requirement, Smith must allege facts sufficient to show Defendants were "actually, subjectively aware that [their] own conduct *caused* a substantial risk of serious harm to" Smith. *Wade*, 106 F.4th at 1262 (emphasis added). Even so, if Defendants responded reasonably to the known risk, they cannot be found liable. *Id*. (citing *Farmer*, 511 U.S. at 844–45).

Smith's allegations fail to plausibly show a causal connection between Defendants' conduct and his alleged injuries. *See Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) ("To prevail on a claim of deliberate indifference, plaintiffs must satisfy both an objective and subjective inquiry and must establish a necessary causal link between the challenged conduct and their injuries." (internal citations and quotations omitted)); *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (plaintiff sufficiently alleges a failure-to-protect claim by alleging facts showing "(1) a substantial risk of serious harm;

(2) the defendants' deliberate indifference to that risk; and (3) causation." (citation omitted)). There are no allegations indicating how or when Smith was exposed to other inmates which created a substantial risk of serious harm. There is no allegation suggesting other inmates had access to Smith before or after he was transferred to the padded cell.[20] There are no allegations suggesting Defendants had knowledge other inmates had access to Smith, encountered Smith, were placed in a cell with Smith, or any other possible scenario. Even if the court were to assume inmates had access to Smith before Tidwell placed him in a padded cell, there are no allegations to suggest the inmate or inmates had violent backgrounds or history of which Defendants were subjectively aware but failed to act to alleviate the substantial risk of harm to Smith. There are no allegations that connect each Defendant to the alleged assault. Simply put, Smith's allegations do not plausibly suggest Defendants were subjectively aware that their own conduct caused a substantial risk of serious harm to Smith. Smith has failed to "allege enough facts to nudge his claim . . . across the line from conceivable to plausible." *Mann*, 713 F.3d at 1315.

Accordingly, Smith has not alleged facts to plausibly show Defendants acted with deliberate indifference by failing to protect him. Defendants' motion is due to be granted as to Count I.

---

[20] Notably, the failure-to-protect claim does not include an allegation any of the Defendants failed to monitor or protect Smith from falling after Tidwell noticed he was a fall risk. Nor does Smith allege he incurred his injuries in a fall at the jail.

B.    Counts II, III, and IV – Supervisory Liability

Counts II, III, and IV seek to hold Defendants Franklin and Jackson liable pursuant to § 1983 on theories of supervisory liability. Those counts are worded nearly identically, with slight variations to allow each count to allege a violation of a different constitutional right. Count II seeks to impose supervisory liability with respect to the alleged violation of Smith's right to be free from harm from other inmates. (Doc. No. 83 at 20–22.) Count III seeks to impose supervisory liability with respect to the alleged violation of Smith's right to adequate medical care. (*Id*. at 22–24.) Count IV seeks to impose supervisory liability with respect to the alleged violation of Smith's alleged right to be released from jail after the expiration of the twelve-hour hold for intoxication. (*Id*. at 24–26.)

"'[T]he standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous.'" *Christmas v. Harris Cnty*., 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Braddy v. Fla. Dep't of Lab. & Emp't. Sec*., 133 F.3d 797, 802 (11th Cir. 1998)). "'[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)). Smith does not allege Franklin or Jackson personally participated in the alleged unconstitutional conduct, so he "must allege facts that show a causal connection between their actions and the alleged

12

constitutional deprivation." *Id.* at 1297–98. Smith "can meet that extremely rigorous challenge" by alleging facts sufficient to establish one of the following three conditions:

> (1) a history of widespread abuse put [Franklin and Jackson] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so; (2) [Franklin's and Jackson's] customs or policies result[ed] in deliberate indifference to [Smith's] constitutional rights; or (3) facts support an inference that [Franklin and Jackson] directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1298 (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)). Smith does not allege Franklin or Jackson "personally directed [anyone] to act unlawfully or . . . knew they would do so and failed to stop them. That leaves options one and two." *Id.*

As for the first option, Smith alleges Franklin and Jackson "were on notice [of] a history at the Elmore County Jail of widespread abuse arising from previous federal judgments in lawsuits against . . . Franklin and other Elmore County Jail staff in which violations of inmates' rights were found to have occurred." (Doc. No. 83 at 20, 22, 24.) "As a result," Smith alleges, "there is a causal connection between the conduct of . . . Franklin and Jackson and the constitutional violations alleged because they knew that their subordinates would act unlawfully and failed to stop them from doing so." (*Id.* at 20, 22–23, 24–25)

"[T]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Myrick*, 69 F.4th at 1298 (quoting *Christmas*, 51 F.4th at 1355).

13

To provide examples establishing a widespread history of incidents of unconstitutional conduct at the jail, Smith cites the following five cases in each of Counts II through IV.

- *United States v. Hicks*, Case No. 23-cr-351-ECM-JTA (M.D. Ala. 2023) (a criminal case in which an Elmore County Sheriff's deputy pled guilty to deprivation of rights under color of law by punching and kicking someone who was handcuffed and lying on the ground);

- *Murphy v. Franklin*, No. 2:04-cv-1218 MHT, 2007 WL 2381991 (M.D. Ala. Aug. 17, 2007) (an Elmore County jail pretrial detainee alleged[21] that, in late 2003 and early 2004, as punishment for a rule infraction, Franklin and other jail staff deliberately subjected him to prolonged isolation and extremely inhumane, unsanitary conditions, including prolonged shackling to a toilet that consisted of a grate covering a hole in the floor);

- *Brinson v. Franklin*, No. 2:04-cv-1217-WKW-TFM, 2006 WL 3147673 (M.D. Ala. Nov. 1, 2006) (an Elmore County jail pretrial detainee alleged[22] that, in March and April 2004, Franklin and other jail staff deliberately subjected him to prolonged isolation and extremely inhumane, unsanitary conditions, including prolonged shackling to a toilet that consisted of a grate covering a hole in the floor);

- *Cotney v. Franklin*, No. 2:03-cv-1181-WKW-CSC, 2005 WL 1514047 (M.D. Ala. June 24, 2005) (in which an Elmore County jail pretrial detainee alleged[23] that, in April and May 2003, as punishment

---

[21] The *Murphy* opinion concerned the denial of a motion to dismiss. *Murphy*, 2007 WL 2381991. The *Murphy* case appears to have settled shortly before the scheduled pretrial conference and was dismissed on the parties' joint motion. *Murphy v. Franklin*, Case No. 2:04-cv-1218 MHT (Docs. No. 34, 39–41.) Thus, there was no judicial finding of liability in *Murphy*.

[22] The *Brinson* opinion concerned the court's ruling on a motion to dismiss. *Brinson*, 2006 WL 3147673. The *Brinson* case appears to have settled shortly before the scheduled pretrial conference and was dismissed on the parties' joint motion. *Brinson,* Case No. 2:04-cv-1217-WKW-TFM (Docs. No. 52–53.) Thus, there was no judicial finding of liability in *Brinson*.

[23] The *Cotney* opinion concerned the court's ruling on a motion to dismiss. *Cotney*, 2005 WL 1514047. The claims against Franklin were dismissed in that ruling. *Id*. At trial, a jury found in

14

> for accidentally activating the sprinkler system in his cell, the jail administrator deliberately subjected him to prolonged isolation and extremely inhumane, unsanitary conditions, including prolonged shackling to a toilet that consisted of a grate covering a hole in the floor); and

- *Adams v. Franklin*, 111 F. Supp. 2d 1255, 1260 (M.D. Ala. 2000) (an Elmore County jail pretrial detainee alleged[24] that, in August 1997, in response to his requests for a doctor to evaluate his chest pains, deputies at the jail mocked him, assaulted him, threatened him, and delayed necessary medical care).

(Doc. No. 83 at 20, 22, 24.)

Smith's reliance on those cases misses the mark. Those cases do not establish a widespread pattern of failure to protect from harm from other inmates, delayed right to medical care, or failure to release inmates from jail after the expiration of the twelve-hour hold for intoxication. Hicks was not a jail inmate at the time of the assault involved in his case, and his assault at the hands of a sheriff's deputy had nothing to do with any intoxication-related vulnerability on Hicks's part.[25] The allegations in *Murphy*, *Brinson*, and *Cotney* are extremely similar to each other, but not to this case. They involved cruel punishments for minor infractions at the jail at the hands of jail personnel, not any of the

---

favor of the jail administrator. *Cotney*, No. 2:03-cv-1181-WKW-CSC (Doc. No. 77). Thus, there was no judicial finding of liability in *Cotney*.

[24] The cited *Adams* opinion concerned the court's ruling on a motion to dismiss. *Adams*, 111 F. Supp. 2d 1255. The *Adams* case was dismissed on summary judgment. *Adams*, 2:99-cv-00815-ID-CSC (Doc. No. 41.) Thus, there was no judicial finding of liability in *Adams*.

[25] The undersigned United States Magistrate Judge was assigned to *Hicks*. The undersigned is familiar with the facts of *Hicks* and takes judicial notice of them.

constitutional violations alleged here. The nearly-30-year-old incident in *Adams* of delay in procuring medical care (which, incidentally, is factually very dissimilar to the allegations in this case) also is insufficient to establish a historical pattern.

Thus, Smith's examples of prior unconstitutional conduct at the jail fail to plausibly show Franklin and Jackson were on notice of a pattern of widespread constitutional violations they failed to correct. *See Myrick*, 69 F.4th at 1298 (holding that an allegation that "Fulton County, GA has paid numerous settlements and judgments based on the unconstitutional actions of the Fulton Sheriff and Sheriff deputies" did "not come close to showing a widespread history of abuse" because "[t]here [was] no indication that the judgments and settlements were for the same types of allegedly unconstitutional actions," or "were of continued duration, as opposed to isolated incidents, with one occurring every few years"). Moreover, other than *Hicks*, the events giving rise to the cases Smith cites all happened more than twenty years ago and thus fail to establish "continued duration" of widespread constitutional abuse. *Myrick*, 69 F.4th at 1298. In sum, the specific examples of past abuses cited by Smith are insufficient to carry his pleading burden.

As to the second option, Smith also fails. "The last remaining avenue for establishing a causal connection is to show a custom or policy that resulted in deliberate indifference to [Smith]'s constitutional rights." *Myrick*, 69 F.4th at 1298–99. Smith also may allege lack of an appropriate policy deprived him of his constitutional rights. *Id*. at 1299. "A policy is a 'decision that is officially adopted by the [jail], or created by an official of such rank that he or she could be said to be acting on behalf of the [jail].'" *Id*. (quoting

*Christmas*, 51 F.4th at 1356). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Id*. (quoting *Christmas*, 51 F.4th at 1356). *See also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) ("A custom is a practice that is so settled and permanent that it takes on the force of law."); *Marantes v. Miami-Dade Cnty*., 649 F. App'x 665, 672 (11th Cir. 2016). To demonstrate a policy or custom, Smith must show Franklin's and Jackson's subordinates carried out the unconstitutional acts that harmed him pursuant to a persistent widespread practice or a specific unconstitutional policy. *Myrick*, 69 F.4th at 1299.

In Counts II, III, and IV, Smith alleges Franklin and Jackson "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices that allowed Elmore County Jail staff to refuse and/or fail to provide [Smith] with basic constitutional rights while he was a pretrial detainee in the Elmore County Jail." (Doc. No. 83 at 21, 23, 25.) This kind of vague[26] and conclusory allegation tracking the elements of a claim without meaningful factual enhancement is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked

---

[26] The vagueness of Smith's allegations regarding the maintenance of policies and procedures is underscored by the fact his allegations concerning jail policies and procedures are worded almost the same in Counts II, III, and IV, even though each count is directed at a different alleged constitutional violation. To the extent Smith varies the wording at all from one count to another, he fails to do so with any meaningful particularity as to what specific policies or procedures he seeks to challenge or how those policies caused his injuries.

17

assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 555, 557) (citations omitted and alterations in original)).

In the absence of facts specifically identifying and establishing the existence of a particular unconstitutional policy that harmed Smith, "[p]roving that a policy (or absence thereof) or custom caused a constitutional harm would require [him] to point to multiple incidents" in which jail staff were allowed or even encouraged to act in an unconstitutional manner. *Myrick*, 69 F.4th at 1299. Aside from his own alleged experience while he was detained at the jail, Smith provides no specific allegations of even one similar incident, nor any facts demonstrating jail employees were acting in accordance with any particular unconstitutional jail policy when they allegedly violated his rights, nor any facts to show jail employees harmed him because of an unconstitutional lack of proper jail policy. *See Spears v. Meeks*, No. 2:10-cv-671-WKW, 2011 WL 1563062, at *4 (M.D. Ala. Apr. 26, 2011) (finding no liability on the part of a sheriff because the plaintiff made "no factual allegation of any decision made by [the sheriff] which was communicated to [subordinates] and resulted in their alleged deliberate indifference to [the plaintiff's] medical needs," and no allegations "showing that [the sheriff] directed his subordinates to act unlawfully, or that he knew that the subordinates would act unlawfully and failed to stop them from doing so;" rather, the plaintiff relied on his own case as the evidence of the sheriff's allegedly unconstitutional policies). Smith's alleged experience alone is insufficient to establish the existence of a custom or practice to state a plausible claim against Defendants Franklin and Jackson. *See Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011) (discussing

18

how a single instance of unconstitutional conduct is not enough to show the existence of an unofficial custom or policy).

Accordingly, Defendants' motion is due to be granted for Counts II, III, and IV.

C.      Count V – Deliberate Indifference to a Serious Medical Need

Count V is a claim against Tidwell, Young, Svencer, and Rines for deliberate indifference to Smith's serious medical need. As already explained, Smith must allege facts which plausibly show that Tidwell, Young, Svencer and Rines subjectively knew that their actions placed Smith at substantial risk of harm. *See Wade*, 106 F.4th at 1262.

"Under Supreme Court precedent, 'deliberate indifference to [the] serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain"' in violation of the Eighth Amendment." *Stalley*, 124 F.4th at 1283 (citation omitted).[27] "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (quotation omitted), and, in either instance, that, if left unattended, poses a substantial risk of serious harm, *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003))." *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1188 (11th Cir. 2020) (internal quotations omitted).

---

[27] As aforementioned, "the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees" and the standards for a deliberate indifference claim "under the Fourteenth Amendment are identical to those under the Eighth." *Goebert*, 510 at 1326.

Even if Smith has alleged that he suffered an objectively, sufficiently serious deprivation,[28] he has not alleged facts that plausibly show Defendants Tidwell, Young, Svencer, and Rines subjectively knew their actions placed Smith at a substantial risk of serious harm. Smith alleges Defendants Tidwell, Young, Svencer, and Rines "knew of his intoxicated condition when he arrived at the [jail] on July 8, 2022, because [he] was unsteady on his feet and unable to walk without assistance[,]" and that he was not afforded medical care until "8:38 p.m. on July 10, 2022," when Defendants Tidwell and Young took him to be evaluated by a correctional nurse "because he was lethargic and would not eat." (Doc. No. 83 at 10, 26–27.) Smith further alleges Defendants Tidwell, Young, Svencer, and Rines denied him medical care "despite [him] having been observed to be lethargic, unsteady on his feet, refusing to eat or eating very little, and unable to communicate coherently as a direct result of having suffered a severe beating . . . ." (*Id*. at 27.)

The facts alleged do not plausibly show that Defendants Tidwell, Young, Svencer, and Rines knew that they would seriously jeopardize Smith's health by not taking him to

---

[28] Smith does not allege that Defendants Tidwell, Young, Svencer, and Rines were present at booking to observe his intoxicated state, including his unsteadiness on his feet. As previously noted, the third amended complaint contains no factual allegations from which it could reasonably be inferred they were present or subjectively aware of Smith's intoxicated condition at the time he was booked or for at least one day thereafter. Tidwell did not encounter Smith until after 6:00 p.m. on July 9, 2022, which was when Tidwell began his shift. (Doc. No. 83 at 9.) Smith and Rines first appear in the factual narrative after Tidwell directed them to assist Smith with showering. (*Id*. at 10.) Young's only participation in the alleged ordeal was to assist in taking Smith to the nurse on July 10, 2022. (*Id*. at 10, 27). In any event, "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Burnette v. Taylor*, 533 F.3d 1325, 1333 (11th Cir. 2008).

20

a nurse from July 9, 2022[29] to July 10, 2022.[30] According to the allegations in the complaint, at the time Tidwell deemed Smith a fall risk[31] and at the time Svencer and Rines were tasked with assisting Smith with showering, Smith had not yet been observed to be lethargic, eating and drinking very little, or unable to coherently communicate. In addition, there is no allegation that connects the alleged "severe beating" of Smith with Defendants' alleged knowledge of it. Smith does not allege Tidwell, Young, Svencer, and Rines observed or had knowledge of any "severe beating" of Smith by an inmate or inmates. Nor does Smith allege Tidwell, Young, Svencer, or Rines observed Smith's bruises, injured trachea, damaged lung, or other trauma-induced injuries. The allegations in the complaint do not plausibly support the inference that, at some point prior to Smith being taken to the

---

[29] None of the named defendants are alleged as "encounter[ing]" Smith until "6:00 p.m. on July 9, 2022," when Tidwell began his shift. (Doc. No. 83 at 9.)

[30] At oral argument, Smith's counsel contended Smith had been beaten before Tidwell placed him in the padded cell at 11:22 p.m. on July 9, 2022. (Doc. No. 73 at 30–31). He contended Tidwell's observation of Smith's potential fall risk was "the key" to establishing that, prior to Tidwell placing him in a padded cell, Smith suffered obvious injuries from being beaten in the jail. Yet, the third amended complaint contains no such allegations. (*See* Doc. No. 83 at 10 ("At some point during his detention, [Smith] was severely beaten and suffered serious physical injury. [Smith]'s condition continued to deteriorate on July 10, 2022." (emphasis added)).)

[31] In the third amended complaint, Smith alleges his unsteadiness on his feet indicated his intoxicated condition. (Doc. No. 83 at 9, 26.) He does not allege his unsteadiness on his feet was a product or indication of the alleged beating in jail. Moreover, the complaint alleges Smith was unsteady on his feet from the time he arrived at the jail and he needed a wheelchair to be moved from one cell to another since booking. (*Id.*) Hence, the allegations in the third amended complaint do not plausibly support the conclusion that Tidwell's observation Smith posed a fall risk, without more, was sufficient to place Tidwell or any other Defendant on notice that Smith had suffered some injury in the jail that required immediate medical care.

21

nurse,[32] Tidwell, Young, Svencer, or Rines knew of any serious medical problem demanding prompt care. *See, e.g., O'Connor v. Reddish*, 2026 WL 74569, at *3 (11th Cir. Jan. 9, 2026) ("[T]o succeed on his [deliberate-indifference] claim against [the defendant], [the plaintiff] must allege facts that plausibly show that [the defendant] knew that it would seriously jeopardize [the plaintiff's] health to give him a sick-call form instead of referring him for immediate care. But the facts he asserts don't support that conclusion.").

Consequently, the facts alleged do not establish a claim that Tidwell, Young, Svencer, or Rines were deliberately indifferent to Smith's serious medical needs. Accordingly, Defendants' motion is due to be granted as to Count V.

## VI.    CONCLUSION

Accordingly, the undersigned Magistrate Judge RECOMMENDS the following:

1.    The motion to dismiss filed by Franklin, Jackson, Tidwell, Young, Svencer, and Rines (Doc. No. 85) be GRANTED.

---

[32] The third amended complaint states that, <u>on July 10, 2022</u>, Smith became lethargic and stopped eating, <u>and on that day</u>, "Officer Tidwell and Officer Young took [Smith] to the nurse's station" "to be evaluated by . . . Nurse Oliver" "because he was lethargic and would not eat." (Doc. No. 83 at 10, 27.) The third amended complaint fails to factually allege how much time passed between the discovery of Smith's lethargy and lack of appetite by Tidwell and Young and their action of taking him to the nurse. There is no factual allegation plausibly supporting an inference Tidwell and Young delayed taking Smith to the nurse after discovering Smith's lethargy and lack of appetite.

2.      Smith's claims against Franklin, Jackson, Tidwell, Young, Svencer, and Rines be dismissed for failure to state a claim upon which relief can be granted.[33]

3.      This action be dismissed with prejudice.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **March 23, 2026**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Smith is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

---

[33] Because Smith's allegations fail to state a claim for a constitutional violation, Defendants' assertion of their right to qualified immunity provides an alternative basis for dismissal.

23

The Clerk of the Court is DIRECTED to correct the docket sheet to indicate Plaintiff is Patrick Smith, as next friend of Hunter Daryl Smith, an incapacitated person.

DONE this 9th day of March, 2026.


_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE